015-1190, Atlas v. St. Jude Medical. Thank you and good morning again, Your Honor, and may it please the Court. So this is the point where we get to the question of the refinement that the District Court issued to its earlier claim construction on the establishing and particularly the transmitting limitation. And again, I want to start with Figure 3 and this is going to be page 838 in the St. Jude Before you get started, can I ask you to clarify something because your claim construction argument to me as between the two different briefs, which both do address this establishing, has been, I think, a little bit of a moving target for me and I want to make sure I understand what your argument is on establishing. And in particular, here's one thing I want you to look at because this kind of resonated with me, but then I thought it wasn't, and I thought you might actually prevail on this, but it wasn't actually the way I thought that you explained your claim construction. It was the way the red brief did. So I want to actually ask you to open the red brief for me and look on page 9 and tell me, is this an accurate articulation of your claim construction? It's about after number 3 when these quotes come in about what the two different constructions appear to be and it says, in advance, and then see the italicized of the entire communication cycle as St. Jude contended. So they're saying everything has to go in advance of the whole communication cycle, which, trust me, I get your argument about figure 3 completely, and you have alternatively argued something different, which I like, but it doesn't feel like what's in your blue brief necessarily, so I want to be sure, but it's clearly what they think your argument is. I'm sorry, Your Honor. Could you identify the particular language you're referring to? The part I like? The part that they, yeah, particularly that, Your Honor, but perhaps where you're asking if they've characterized that position. Page 9, then when it says, as Atlas contended, that part, or in advance of the first interval within the cycle during which remote is allowed to transmit to the hub, parentheses, as Atlas contended. See, why do I like that? Because I like that because it's not sort of willy-nilly and it fits with figure 3 and it does all your battery saving that you want, and I'm just trying to understand, is that your construction as argued for on appeal as well? They certainly seem to think so in the red brief, but I kind of got a slightly different impression from the blue brief, that you might be going for something a little different. No, Your Honor. I think that is, if I hadn't made that clear in the prior argument, it's certainly what I intended to say. It's like flipping on and off a light switch. You do it when you want the lights to turn on, you turn them off when the lights are to turn off. So let's do this with reference now to figure 3. Yes. So the in advance that the district court chose isn't really something we need to throw out the window. It's just the further specificity of the words in advance that are what you're saying is wrong. It is in advance of something. That's right. It's just not in advance of the whole cycle. Instead your argument would be it's in advance of the period that begins at 84, right? For the particular remote, yes, that's right. No, no. See, now that's where you're losing me. For the particular remote. Because here's the problem. If you don't, see this is why, this is why I'm doing this because I was a little nervous you were going to say that because I think based on figure 3 that what is articulated in my understanding of this patent is that everything with regard to each of the remotes is transmitted at least by the period designated as 82. And that's the way in which you would effectuate all the battery savings that is a hallmark of the significance of this patent. Because if TXOP13 doesn't know what the cycle interval is for 1, 2, 3, 4, up to 12, it doesn't know it can turn off during all that time. Do you follow what I'm saying? I do. Yes, Your Honor. So I kind of think everything has to be sent by the end of 82, and I still think you win under that construction, by the way. So I'm just trying to understand whether or not that's fair, or do you really, are you going to hold yourself to this, each remote thing, which means TXOP13 might not have any clue when it's supposed to turn on and off until it gets to 12. Do you see my problem? That doesn't realize any of the battery savings. I do, Your Honor. The only issue that I would raise, again, goes back to column 25 in the end flag message, which is the thing that tells the remote definitively when there's an end of a frame. Theoretically, you wouldn't need that if all the information were conveyed to each remote prior to interval 84. So there'd be no need for that. The remote would theoretically already know definitively when frames were ending. So that's my only hesitation in conceding outright that everything is sent to every remote before interval 84. What's the relationship between the TXOP interval and a frame? Can there be more than one frame in that interval? Frames are just an order of magnitude. Each one of these intervals has frames. A number of them. Yes. Right. So why would one, I take it your suggestion is that the flag that says the packet is ending is somehow, and you get that at the end of the packet, is somehow inconsistent with a the overall time slot in which the remote can transmit 40,000 frames, to pick a number out of the hat, it doesn't have to know when that's coming to an end. I don't understand why there should be that suggestion of an inconsistency. Because I think each of the frames, including the last one in the particular interval, would have the sending flag on it. Right. But the remote has a separate clock going that says I've got the following number of milliseconds or something that I can use, and you know, as many frames as I can get into that, I still want to know when each frame ends, but that's kind of an independent matter from when my microphone goes off. I take your point, Your Honor, and that may very well be the way to reconcile that teaching with Judge Moore's proposal. But obviously the problem... Well, I thought my proposal was your proposal, just to be clear. Of course, your proposal I was taking from the Red Braids, so, you know, it's all fair. The one thing that is very clear, Your Honor, is that our biggest problem with the district court's construction is when all of this information is to be transmitted. And your argument, I think that we all have it very well, is that figure three, you can't say in advance of the cycle, because this is, the whole thing is the cycle, and if it's in advance of the cycle, it's not even on figure three. And figure three talks about the information of intervals and start and stop time being conveyed at 76, and actually repeated at 82, by the way, a lot of it, the information. The one thing I expect to hear from St. Jude on this is that there was no indication below during oral argument, which is really the first time any of this came up, as to where the information is described and what information is transmitted. I would refer the court to column 13, and this is page 854 of the St. Jude Appendix. Starting at line 23, the time for the overall communication cycle 70, along with the specific interval allocations within the cycle 70, are broadcast by the Hub 64 during the information intervals 76 and 82, in the form of control information delivered in an information frame transmitted during the information interval 76. So that very clearly explains what's going on, at least in interval 76, which is all this length information that the court required to be transmitted in advance of the communication cycle, is actually sent according to the preferred embodiment during interval 76, which is the first interval of the communication cycle. So I took it that the driving force behind the district court's view of what in advance means here, and I guess St. Jude's argument, was the notion that all the remote receivers would be asleep and not get this slot allotment information unless they had been given the information before the cycle. Can you respond to that? Yes, if we look at figure 16, this tells you how the remotes actually scan different channels looking for activity. This all is happening outside the communication cycle, per Judge Reyna's point earlier on. So this is how the remotes in the first instance see that there's activity going on, and if we look down to element 261 of figure 16, it says, wait to receive info frame. So now it is ready to participate in a communication cycle, but until this happens, there isn't a communication cycle, so the fact that the receivers may be on scanning the different channels for activity wouldn't be the remotes having their receivers on at times other than when they are expecting to receive a frame. This wouldn't be part of the communication cycle. Can I clarify and ask a question, or ask a question, but does that mean that all of the remotes are on in terms of their receivers at the start of every communication cycle? Before it starts. Before it starts? Yes. So we have all of this going on up to wait to receive info frame, so... And is this only relevant for the first communication cycle? Because the idea is these things would repeat. We believe it's not limited to that. We believe that it could be for every single communication cycle. So in the case where there is a single remote and a single hub, the remote can be listening like this for activity from the hub before each communication cycle. And then when the communication cycle starts, the hub would define when each device is talking to the other, and therefore when the receivers and transmitters are on respectively. So this shows what happens outside the communication cycle, which is how the remotes know that the communication cycle is about to occur. But this wouldn't be part of... Is there an instance where a communication cycle is initiated, but no request or response from a remote is made? I'm sorry, Your Honor? Can there be a situation where a communication cycle is initiated, but there's no request for any particular remote to respond? Like standby, everybody's still on standby? No, I think given the teaching that I read earlier about the response that the remotes give to any frame from the hub, there would have to at least be an acknowledgement that it would be returned from the remotes to the hub that received the information frame. So at the very least, there'd be two-way communication to that extent. But it is possible in that circumstance that a TXOP may go unused because the remote has nothing to transmit. So if you have a communication cycle, then there must be at least one response from one of the remotes? We think, yes. We think that Figure 3 makes it very clear, and the teachings of the patent, that if there is to be a communication cycle covered by the claims, there has to be two-way communication. There cannot be the hub just transmitting with nothing coming back. That wouldn't infringe, and it doesn't anticipate. Let me just see if I understand this or not. In your view, the communication cycles are not continuous in that the end of one is the same moment as the beginning of the next. There's a gap, and in that gap, there can be information that allows the receiver to turn on and, as you say, scan for information from the hub. Is that... Yes, Your Honor. That's exactly correct. And is that what's going on in 88 Hub Beacon? Is that the... No. The beacon frame does something else. According to the teachings of the patent, that helps the hub resolve potentially conflicting traffic with other communication groups. So what we have going on here, which isn't shown in Figure 3, but is shown in Figure 16, are these remote, unilaterally scanning channels to find activity. Where is the text associated with Figure 16 to indicate that this cycle is not continuous in the sense that I was just talking about? Well, I don't think there is text associated with Figure 16 specifically about the cycle not being continuous. Well, where... If I look at Figure 3, I think continuous cycle in that the end of cycle number 17 is coterminous with the beginning of cycle number 18, specific numbers. Your Honor, I am not familiar with any teaching in the 734 patent that says that. Is there something in the patent that contemplates otherwise? Figure 16, Your Honor. So we don't think there'd be any reason to have Figure 16 if these cycles were continuous. And the column discussion of Figure 16 is what? Yes, Your Honor. I'll find that in just a minute. If we start at column 40, line 35, there's a description of the LISN RF state, and it says, if a communication cycle were continuous, there'd never be the ability to add a remote. Because there wouldn't be the opportunity for the remote to scan these channels waiting for an information frame. That all has to happen before the transmission of the information frame, otherwise remotes can't join the group. And we know from the teachings of the 734 patent that that's possible. And I see that I've exhausted my rebuttal time, so unless there are further questions. Thank you, Mr. Summerfield. Mr. Perry? Thank you, Judge Moore. May it please the Court. If I could start with that last point, Mr. Summerfield has misdescribed the invention. Judge Toronto, it's column 11, line 39 and 40. The communication cycle shown in figure 3, which the hub establishes and which is repeated on a continuous basis as long as the hub is active. This absolutely is continuous repeating cycles. That is disclosed throughout the invention. I'm sorry, that was, you said column? Columns 11, Your Honor, lines about 38 through 42, was what I just read. Okay, thank you. It discloses a continuous repeating cycle. Figure 3 is not an embodiment. Not a single claim in this patent reads on figure 3. Figure 3 is a snapshot. Every claim requires repeating communication cycles. The only break that is disclosed in this patent are two, the hub beacon, which does not happen every time, it happens at preset intervals, for example, every five seconds, and the entry of a new device in the network, which is what figure 16 shows. When a new device comes in, it turns its ears on, looks around, and tries to find a signal. That's disclosed in column 33 and column 40. That has nothing, that's the listen RF state. That has nothing to do with what we're talking about today. What has to do with today, once the cycles have started, what is going on in the information frame? And Judge Moore, this goes to your question about what's being claimed. And I should make a point here. The previous appeal involved what was being transmitted from the remotes to the hub. This appeal involves what's being transmitted from the hub to the remote, so the receivers have to be listening. Judge Taranto, in response to another one of your questions, start column 28, line 62-63. The remotes all have their RF modems active to receive each information frame. So all the remotes have to be turned on at the beginning of the information cycle. That's absolutely clear from this disclosure. I'm sorry. Just give me the... Column 28, line 62-63. All the remotes are on. They're all receiving. Now, Judge Moore, to go to your... But wait. But all the remotes are on in the information frame. Yes. So then we go to... The information frame, I understand, to be part of the communication cycle. Am I wrong to think that? Absolutely not, Your Honor. But the question is, what does it contain? And here we go to column 26 and 27, which discloses Mr. Summerfield's new favorite figure, figure 8, which he told you in the first appeal was a disclosure of what's being transmitted. The body field 164, figure 8, of the information frame contains all the information needed by the remotes, as shown in figure 3. That's on column 26 at the bottom there, line 62. I don't understand your point. You're going too fast and you need to... I apologize, Your Honor. Stop. Don't interrupt me. You're going too fast and you need to divorce from this argument any more characterizations which are not welcome about, like, his new favorite figure, his new this. Don't do that, Mr. Perry. You're better than that. Don't do it. Go ahead. Keep going. Figure 8, Your Honor, which we talked about this morning, has a body field 164. The disclosure at column 26 at the bottom, line 62 to 65, tells us what is in that information frame, which is also... What tells us what's in the body field of the information frame. The body field 164, which was figure 8 that we were talking about this morning. That was my point on tying it to figure 8, Your Honor. Then it goes on. The body field of an information frame includes a number of different fields. Now, here's the key point. We go over to column 27. There is then a list of 15 things that the information frame says, which is the information the remotes need. I would like to focus, Your Honors, on numbers 4, 5, and 6, which are clustered around line 10 of column 27. 4, the number of BTIs. That stands for basic time increments, which in this patent is defined in the preferred embodiment as 4 milliseconds. The number of BTIs in the present communication cycle. 5, the number of BTIs in the next communication cycle. And 6, the number of BTIs in the communication cycle after the next communication cycle. So that if we look back to figure 3, Your Honors, that information frame 76 is transmitting not only the duration of the current cycle, but also the next two cycles, which therefore gives the remotes the starting time of those next two cycles. That's the district court's claim construction that is clearly supported here in the specification. This is confirmed many other places. Continuing on column 27, at the bottom, about line 57. I guess I'm a little slow to follow you. So part of my problem with the district court's construction is that it says in advance of the communication cycle, and it seems to me this information is being conveyed during the communication cycle, at least the very first iteration of the communication cycle, because it's being conveyed in period 76, and in fact repeated in period 82 under figure 3. So when the district court says in advance of the communication cycle, that just feels too binary and wrong to me. You might be correct that information is communicated in advance of subsequent communication cycles. But the very first one clearly includes the information as part of the communication cycle. Your Honor, this may be where I went too fast. No, respectfully, because the very first cycle is what's disclosed in figure 16 and columns 33 and 40 as having an entirely separate mechanism. The new entry remote, the new entry device, turns on its ears and puts itself in listen RF stage to try to find that first cycle. It is the cycles which are repeating throughout. The hub is broadcasting this information at the beginning of every cycle. Well, I didn't understand, and am I wrong? I didn't understand the RF listening state to be part of the communication cycle. I agree with that. I understood the RF listening state to be when the hub, either A, first becomes active, or B, when new remotes enter and are looking to sync with the hub. Yes, Your Honor. In either case, if that's not part of the communication cycle, I still don't understand how the conveying of start and stop times and intervals and time slots isn't what's being done in field 76. I mean, at least for figure 3, it seems to be disclosed as what's being done in field 76 of figure 3, and that seems to me to be clearly part of the communication cycle. Your Honor. This is where you're losing me. It absolutely is being conveyed in information frame 76 for the current cycle, for the next cycle, and for the second subsequent cycle. It's conveying the duration of three cycles in information frame 76. The reason this is important, after the initial join, after listen RF, limitation E of the assertive claim, of all the claims for that matter, requires the remotes to power off their receivers. That's the invention, after all, is that what the disclosure says is that the prior ART knew very well how to turn off transmitters, but it didn't know how to turn off receivers. This invention is devoted to turning off the receivers. So at some point during the cycle, the receiver turns off to conserve power. Then the question is, how does it know how to turn on again before the start of the next cycle? And that's where the district court's construction says it has to know before the cycle starts, because as I believe was discussed this morning, the remotes have to have their ears on, they have to be listening, they have to turn on at the start of the cycle. But are you saying 76 is not part of the communication cycle? Not at all, Your Honor. It's part of the communication cycle. But that's when the information's being sent. Absolutely. So it can't be right to say the information has to be sent in advance of a communication cycle if the information is actually being sent after the start of the cycle. Your Honor, let me try it a different way. I apologize. If the hub sends the duration of this cycle, it is also sending, by definition, the start time of the next cycle, because the next cycle starts when this one ends. So in the district court's construction, which actually says information necessary to determine the starting time and duration has to be transmitted. So wait, just to be clear. So do you think the way that this technology operates is that three cycles worth of turn on and turn off for your receivers are sent at a time, and the receiver will never turn on or turn off or change at all, but rather that that initial information that's sent controls for each TXOP for three cycles? Is that what you're trying to convince me of? That, what you just described, would meet Claim 1. Most of the other claims have additional limitations, including cycle length adjustment, which is another feature of this invention that would need to be taken into account dynamically, which is why... Which is why it can't work the way you're describing, because... For the asserted claim, that's right. I'm not following you. I'm sorry. I'm not following you, and unless I'm wrong, I mean, Figure 3 actually says T0 right at the top, which I assume, why else would you say time with an arrow and a big line unless this is time zero, beginning the communication cycle, and then the arrow points, and the information comes after T0. So I just don't understand how that can be reconciled with the district court's construction of in advance of the cycle. Let me try it two different ways. And then one last question relevant to that. When it says at 86, TXOP request, I understand this to be remote and their ability to send requests to the hub to participate in the next communication cycle. Like, if they weren't part of this one, they can request to be in it, which means, oh, wait, time out. We've got a new player in the field. We've got to expand our team. That means everybody gets a slightly different time. So this is an even Figure 3 contemplates every single cycle to be a dynamic cycle because there's always in every cycle the opportunity for a new entrance, which could change the timing of everybody's future time slot. I agree with that, Judge Moore, which is why it is absolutely critical that the remotes turn on at the beginning of the next cycle, the second cycle, if you will. If we are in Cycle 1, at some point all of the remotes shut down. That's limitation E. When do they turn on again? They have to know that before they turn off because otherwise they can't turn on. That's the District Course Claim Construction, that whether it's communicated as a clock time, which is Claim 34, or a duration of the current cycle, and therefore because it's a repeating cycle, which is Claim 14, either way, they have to know before they turn off when to turn on again. They can't be told, as ATLAS's construction would have, ATLAS would go to that time zero and then say, hey remotes, turn on, I have some information to send you about this cycle. They won't get that because they're turned off. Why doesn't information in Cycle 13 about the end of the inbound portion suffice to tell the remote, turn on your receiver so that without saying anything about Cycle 14, the receiver will be on to get the information when Cycle 14 starts? The disclosure here does not contemplate duplex transceivers. It contemplates either receiving or transmitting and it specifically discloses you can turn off one or the other or both. The way inbound portion is described, the remotes are only transmitting, they're not receiving. It's not a two-way communication. Outbound portion is just the sounds of the hub is sending things to the remotes and they're receiving. I think I wasn't clear and it may be because my head's not clear, but why can't the information in 76 and 82 in Cycle 13 say your receiver should come on at 11 o'clock in Cycle 13 and then it will be on at noon for Cycle 14 and it doesn't have to have any information about Cycle 14? Judge Toronto, that is the disclosure of 34. That would meet the district court's limitation and construction would not meet ATLAS's construction because that is conveying the start time in advance of Cycle 14. I agree with what you just said. During 76 and 82... I guess maybe I've misread the district court's construction. I thought that the district court's construction required that information about Cycle 14 be sent to the remotes before Cycle 14. ...information necessary to determine the start time, which can either be a clock time to start, turn on at 11 o'clock... This is what I guess from the beginning of my thinking about this case has confused me. It seems to me that if in Cycle 13 you say, turn on at 11 o'clock, you haven't said one word about when Cycle 14 starts. We're not even presuming that it starts at noon or midnight. At the top of the hour. And I thought that what the district court required was that information be sent before Cycle 14 starts about Cycle 14's start time. And that seems to me not necessary as long as the receiver is on at the beginning of Cycle 14. But it doesn't have to know how to do that by reference to anything about the start time of Cycle 14. So I agree with all of that. I believe that would meet the claim construction. The reason for that, by the way, is in columns 35 and 36 at the bottom, lines 66 and on. It is necessary, this patent says, in describing, by the way, the present invention, it is necessary for the remotes to recognize when to expect the beginning of the next communication cycle. Which line are you reading, Counselor? It's column 35 at the bottom, about line 65 in the last little bit there. In order to power up the modems to receive the information frames at the beginning of each cycle. So that's the requirement to turn on. This is graphically displayed, Judge Toronto, in Figure 19, to which the Court referred earlier. Which is, unlike for Figure 16, Figure 19 is a flow chart of the logic of Figure 3. Shows at the very last box, Box 312, the remotes have to power down until the next cycle. And then at Box 290 at the top, they have to activate their receiver for the info frame. They have to know when to do that. And all that the District Court's claim construction is saying is that before we get to Box 290, an information has to be sent to the remotes to tell them when to do that. Whether it's by clock time or by the duration of the previous cycle is irrelevant. Most of the disclosures go to describing the duration of the current cycle to establish the start time of the next cycle. That's in column 27 and elsewhere. But either way, the remotes have to know how to turn on. And the reason for that is, if they are not told in advance of cycle 14 in the Court's example, they won't turn on. And then the network won't work. Because the whole battery-saving feature on the receiver side is to turn off the receiver. Before they can turn off, they have to know when to turn on again. When to turn on again, as I said, is in the bottom of 28, at the beginning, and in 35, at the beginning of the next communication cycle. That's what's required. So therefore, they must know before that point. And it doesn't matter when. And it's going to be communicated, Judge Moran, to come back to what we were discussing earlier. It has to be communicated during a communication cycle because this patent only discloses repeating communication cycles with two exceptions, which are irrelevant here, the hub beacon and the active RF state. So that all information is communicated during a communication cycle. The only question is whether the reception information, the turn-on-your-ears-and-listen information, can be communicated after the point at which the receiver needs to be turned on. If I may beg the Court's indulgence to return where this argument started with Mr. Summerfield and Figure 3, ATLAS's construction, as we understand it, and as we described in that page of our brief, is that the start time information can be put in any time during the outbound portion 72, any time between 12 o'clock and 7 o'clock. That is true with respect to the transmission intervals. It is certainly the case that if the receivers are listening, the hub can inform them about the transmission intervals that follow in the inbound portion. It is not true with respect to the reception period, which is what we're talking about here. In the District Court, the pages A23 and A24 of the claim construction order separately construed the cycle information from the interval information, and ATLAS didn't appeal that construction. So all this argument that the interval information has to be communicated before the cycle, we haven't argued that and the District Court didn't require that. What does have to be communicated before the cycle is the start time of the next cycle so that the receivers know when to turn on, otherwise this network would not work. It would be inoperable. It would not be useful. It would be invalid. All of these claims would fail. The Court certainly should not construe the patent in a way that would make the invention inoperable. Thank you. Okay. Thank you, Mr. Perry. Mr. Summerfield, you have some rebuttal time. Thank you, Your Honor. So can you start by addressing what I think you ended with and Mr. Perry began with, which is the relation between, I think, is it figure 16 and this question of whether the communication cycles are continuous. This is my understanding of it, that COM 11 says the cycles are continuous. Figure 16 is about a process that takes place before a remote gets into the cycle. Can you explain? As I said in my argument in chief, and I think to Judge Moore's question earlier, if that were true, then a new remote could never join the communication group. If they truly were continuous, i.e., that after the beacon frame, the information frame were transmitted, a new remote could never join. There wouldn't be an opportunity to do that. And we know from the teachings of the 734 patent that groups can change all the time. Pubs can be reconfigured as remote, et cetera. So if it's truly continuous, in other words, as soon as one ended, another began, no new remote could ever join. And we know that that is not the way this invention is supposed to work. I want to go to the claim construction because I think it's been oversimplified by St. Jude. What I heard St. Jude's counsel say is the only thing the district court required was that start timing communicated in advance. If we look at page A10, it's very clear what the district court was requiring was that the hub transmit to the remotes, quote, information necessary to know the starting time and duration of the communication cycle in advance of that communication cycle. Judge Toronto, to your point, that's not required to accomplish the goal of this invention. And it reads out the preferred embodiment where the control information is sent after the communication cycle starts. And that's a thing that St. Jude seems to ignore. Now, if we go to College Point... Can I make sure I understand the point that you're making here? The claim language says the hub transmitting information to the remotes to establish the communication cycle and a plurality of predetermined intervals. And what Mr. Perry stood here a minute ago and said is, look, we didn't appeal, nobody appealed, we're not talking about the interval information, we're talking about only the start of the cycle. And am I understanding you to argue that the claim doesn't divorce the two? The claim tells you this transmission information is relating to the cycle and the intervals, and so basically it's all together, lock, stock, and barrel, and so it's not enough... By definition, Your Honor, the length of the constituent intervals defines the length of the communication cycle, and certainly the district court didn't divorce the length from the start time in construing that length information, the duration, has to be transmitted in advance. So it isn't any longer a simple capability of telling the remotes, wake up now. That information about the duration has to be communicated in addition. That's the stuff that's in the information frame that's communicated after the communication cycle starts. If we go to column 27, and we look at what St. Jude points out as the various components of the frame information, one of the things that is always communicated is the number of BTIs in the present communication cycle, notwithstanding whatever else may be communicated there. And if we say, well, all these claims have to have that communication cycle and two more, that would be reading an embodiment from the specification into the claims. And if we look at the claims themselves, and we look at claim 34, column 54, starting around line 27, that specifically requires that the hub transmits information about the instant communication cycle and the next one in the same information frame. So there are claims specifically directed to sending information about the communication cycle and the next one. Which claim is that? I'm sorry, it's claim 34, column 54, at around line, I guess, 28. The hub transmitting information to the remotes during a first communication cycle to establish the length of the first communication cycle and to establish the time for the beginning of the next subsequent second communication cycle. And then finally, Your Honors, if we look at claim 14, column 49, that particular claim allows for the hub to transmit a frame, quote, containing information describing the length of the communication cycle prior to the end of the communication cycle whose length is established. Meaning that that claim allows for transmitting all the way up to the end of the communication cycle, certainly not requiring it to be transmitted in advance. As fun as this is, Mr. Summerfield, our time today is over, and I think we need to bring these cases to a close. Thank you for your indulgence, Your Honors. I thank all counsel. The argument was helpful.